William J. Regan, S.
This is a proceeding to settle the accounts of Charles P. Penney, executor under the last will and testament of Gretchen Band Penney. The objections made to the accounting basically raise two issues, namely:
1. Is the executor-husband entitled to his prorata share of the increased values of the securities between the date of the decedent’s death and the date of distribution!
2. Are the expenditures made for improvements to the Canadian real estate a proper charge against the principal of the trust?
As concerns the first of these issues article seventeenth of the will reads:
“If my husband, Charles P. Penney, survives me, I direct my executor to set aside a portion of my estate equal in value to:
“ (a) One-half (%) of the value of my adjusted gross estate (as defined in the United States Internal Bevenue Code), and as finally determined for Federal estate tax purposes, less
“(b) The value of all interests in property, if any, which pass or have passed to my husband under other provisions of this will, or otherwise than under this will, but only to the extent that such interests are, for the purpose of the Federal Estate tax, included in determining my taxable estate and are allowable as a marital deduction. All values shall be those finally determined for Federal estate tax purposes.
“I give and bequeath the said portion of my estate to my husband, Charles P. Penney, absolutely and forever.”
The primary asset owned by the estate is 333 shares of stock of George F. Band Securities Corporation. This corporation subsequently merged with Niagara Share Corporation and 89.8405 shares of the Niagara stock was transferred for one share of the Band stock. The value of said stock at the time of proposed distribution on January 2, 1964, was $23.75 per share.
The balance of the marital deduction passing to the decedent’s husband was determined to be $311,909.16. Pursuant to a provision of the will permitting distribution in kind, petitioner transferred to himself, as the surviving spouse, 17,086 shares of the above-mentioned stock at a value of approximately $18.25 per share, the value as of the date of decedent’s death, for the total of $311,906.88, or a market value as of the date of distribu *519 tion on January 2, 1964 of $405,792.50. Thus, the question presented is whether the stock should have been given a date of death value or a date of distribution value.
Respondents herein have taken the position that the language used in the will is in the nature of a pecuniary bequest, and therefore not subject to appreciation subsequent to the estate tax evaluation; that the gift was capable of exact computation when the adjusted gross estate was determined, and is consequently a legacy of a fixed amount. Respondents in their arguments rely on Rev. Rule 60-87, C. B. [IT. S. Treas. Dept., Internal Rev. Serv.] 1960-61, p. 286; Matter of Kantner (50 N. J. Super. 582); Matter of Gauff (27 Misc 2d 407); Matter of Gilmour (18 A D 2d 154) and other literature and cases wherein it has been held that language similar to that used in paragraph seventeenth of this will create pecuniary legacies of a fixed amount, thereby prohibiting the spouse from sharing in the appreciation of security values from the date of death to the date of distribution.
Petitioner relies on the cases of Matter of Bush (2 A D 2d 526, affd. 3 N Y 2d 908); Matter of Ossman (27 Misc 2d 632) and Matter of Mueller (34 Misc 2d 584) among others, in stating his position that the bequest herein is a fractional share of the estate which carries with it a prorata share of appreciation and depreciation in security values. Of course, this contrary view of the respondents is that the gift herein makes no reference to the residuary and thus cannot be considered a fractional share.
Respondents further argue that the Ossman and Mueller cases were erroneously decided.
In view of the conflict of opinions presented by the cases covering this point and in view of the technical definitions applied to the phraseology as used in the bequest herein, as opposed to the meaning of various similar bequests cited by respective counsel in their briefs, this court is satisfied that the wording of the bequest herein is sufficiently ambiguous and confusing as to render it necessary to look to the intent of the testatrix in order to arrive at what this court considers a fair and equitable decision.
In this respect the court may resort to extrinsic evidence, i.e., the inter vivos trust agreements executed by the deceased during her lifetime. The various trust agreements admitted into evidence upon this hearing and the testimony of Mr. and Mrs. Sheets, together with a reading of the entire will, indicates a testamentary plan in favor of the husband as the prime object of testatrix’ bounty. It clearly appears from all the evidence *520 herein that testatrix intended to give to her spouse the benefit of a full marital deduction, as well as a fair share of the assets on distribution. It is apparent from a reading of the will in its entirety, and from the testimony hereinabove referred to, that testatrix intended to bequeath to her husband the maximum amount possible, without regard to the various interpretations to be given the mathematical formula herein expressed.
This court is very much in accord with the recent decision of Surrogate Harry G-. Herman applied in Matter of Schimenti (42 Misc 2d 983, 986) wherein, after referring to the leading cases on the subject, he concluded: “ These results indicate a constructional preference for the percentage or fractional type of ‘ marital deduction trust ’ ”.
The objections of the respondents and special guardian to the account in this particular are overruled and disallowed, and the account apportioning the increase of value of the assets between the husband’s share and the trust for the children is approved and allowed.
As concerns the second issue herein presented, it appears that the executor charged to principal certain items in relation to property at 426 Johnson Street, Niagara-on-the-Lake, Ontario, Canada, which items consisted for the most part of a new garage and air-conditioning unit. It is conceded that ordinary repairs are generally charged to income and permanent improvements to principal. Nor does there appear to be any serious argument but that a permanent improvement must be reasonable in nature both as to cost and the use to which it is put, due consideration being had to the value and the type of the main structure.
Upon review of all the evidence in this regard, it is the decision of this court that the sum of $1,995.59, representing the cost of the garage and French door, be charged to principal as permanent improvements which will inure to the benefit of the remaindermen and that the balance of the expenditures, or the sum of $1,133.21, be charged to income because of their nature.
Because of the mutual agreement between the parties, reached prior to the commencement of this proceeding, the question of whether the sums paid for gardening, utilities, taxes, etc. 1, upon the property at 426 Johnson Street, Niagara-on-the-Lake, Ontario, Canada, is not decided by this court.
The account should be so modified as to reflect the provisions of this decision.
Decree to be entered accordingly.